UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHENZHEN LANGMI TECHNOLOGY CO., LTD., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE PARTNERSHIPS and )<br>UNINCORPORATED ASSOCIATIONS )<br>IDENTIFIED ON SCHEDULE "A", )<br>)<br>Defendants. ) | No. 25 C 1966<br><br>Judge Sara L. Ellis |

## OPINION AND ORDER

On April 18, 2025, Plaintiff Shenzhen Langmi Technology Co., Ltd., ("Langmi") sued eighteen defendants listed in "Schedule A" to the amended complaint for copyright infringement. Shortly thereafter, Langmi moved for a temporary restraining order ("TRO"). Subsequently, Langmi amended its Schedule A such that it now only seeks a TRO against eight defendants. Defendants Adrmylight, Gwellife, Temgoffeau-US, Wnnxia, Wumeijl, Xiangzhe, and Zsmidu (together, the "Opposing Defendants") oppose Langmi's motion for a TRO. Because Langmi has adequately shown that it possesses a likelihood of success on the merits, and the other requisite showings for a TRO, the Court grants Langmi's motion for a TRO [19].

## BACKGROUND

Langmi is a Chinese company that produces and markets cosmetic products, including remedial and corrective hair shampoos. Langmi owns two U.S. Copyrights, registration numbers VA 2-383-395 and VAu 1-504-640, associated with these products (the "395 Copyright" and the "640 Copyright," together, the "Disputed Copyrights"). Langmi uses the images copyrighted in

the Disputed Copyrights for product packaging and e-commerce listings. Specifically, the 395 Copyright covers the following Black Hair Dye Shampoo image:



Doc. 17-1 at 4. The 640 Copyright covers ten images, including the following images:



2

*Id.* at 11, 16.

The Disputed Copyrights incorporate images that existed prior to Langmi procuring the Disputed Copyrights and that an entity other than Langmi copyrighted previously. The Opposing Defendants identified three images in the Disputed Copyrights and what Defendants believe are the source of those images. First, the Opposing Defendants identified an image of a ginseng plant in the Disputed Copyrights, which the Opposing Defendants argue NiPic, a Chinese picture sharing and trading platform, published on its website. Second, the Opposing Defendants identified three mushrooms on the Disputed Copyrights and state that same design of mushrooms is present on "Sohu.com." Doc. 35 at 12. Third, the Opposing Defendants identified an amber droplet in front of two green leaves design, which Defendants state is the logo of Biodiesel, an Indian company.

Langmi responded to the Opposing Defendants' evidence with its own evidence that it possessed licenses to use the three images in its works. Langmi submitted a declaration from Lang Wang, the owner of Langmi, which stated that he and his wife, Yun Zhao, used his "VIP membership account at www.51yuansu.com" to create the Disputed Copyrights, and that Wang's VIP membership provided him with the right to download and use the designs for commercial purposes on e-commerce platforms. Doc. 40-1 at 1. Langmi attached screenshots of the 51yuansu website showing the designs under Wang's "My downloads" tab and pages showing the ginseng plant and three mushroom designs with the subtext "[t]he material is a commercial copyright material, the material is original or has been authorized by the relevant right holder, the work allows the user to use it according to the authorization." Doc. 40-1 at 8–9, 12. Further, Langmi attached a screenshot of the 51yuansu website, which shows Wang Lang's account "Membership type" as "Lifetime Membership." *Id.* at 16. Lastly, Langmi included screenshots

of the 51yuansu website showing some information about the "VIP service" and "Corporate VIP privilege service." *Id.* at 17–18. However, these screenshots cut off portions of the text, making parts of the page illegible.

A side-by-side comparison of the designs as they appear on the Disputed Copyrights, in the materials Opposing Defendants identified, and on the webpages Langmi identified follows:

The "Ginseng Plant" Design:



| The design as it appears on the Disputed Copyrights: | The design as it appears on NiPic: | The design as it appears on 51yuansu: |
|---|---|---|
| Doc. 17-1 at 6. | Doc. 35 at 12. | Doc. 40-1 at 12. |

The "Three Mushrooms" Design:



| The design as it appears on the Disputed Copyrights: | The design as it appears on Sohu.com: | The design as it appears on 51yuansu: |
|---|---|---|
| Doc. 17-1 at 11. | Doc. 35 at 13. | Doc. 40-1 at 9. |

The "Amber Drop in Front of Two Green Leaves" Design:

| The design as it appears on the Disputed Copyrights: | The design as it appears on Biodiesel logo: | The design as it appears on 51yuansu: |
|---|---|---|
| Doc. 17-1 at 6. | Doc. 35-1 at 7. | Doc. 40-1 at 8. |

Defendants are businesses, which predominantly reside in China or other foreign jurisdictions and which operate as online storefronts through online marketplaces such as Amazon. Langmi submitted screenshots of the Defendants' online storefronts, showing that they offer products that look highly similar to Langmi's Disputed Copyrights. For example:

5



| One of Langmi's Copyrighted Works: | One of Defendants' Webpage Images: |
|---|---|
| Doc. 17-1 at 11. | Doc. 17-3 at 33. |

Langmi submitted an additional affidavit from Wang, stating that he believes Defendants' products harm the goodwill and reputation of Langmi because their products lead to a loss in sales, loss in brand confidence, and take away Langmi's ability to control the nature and quality of products associated with their brand.

## LEGAL STANDARD

TROs and preliminary injunctions are extraordinary and drastic remedies that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). The party seeking such relief must show: (1) it has some likelihood of success on the merits; (2) there is no adequate remedy at law; and (3) it will suffer irreparable harm if the court denies relief. *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). "The two most important considerations are likelihood of success on the merits and irreparable harm." *Bevis v. City of Naperville*, 85 F.4th

6

1175, 1188 (7th Cir. 2023). If the moving party meets this threshold showing, the Court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." *Id.* (citation omitted) (internal quotation marks omitted). "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Lab'ys v Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992)), *abrogated on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009). The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors*, 922 F.3d at 364. Finally, the Court considers whether the injunction is in the public interest, which includes taking into account any effects on non-parties. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

## ANALYSIS

**A.     Likelihood of Success on the Merits**

The Opposing Defendants argue that Langmi cannot show a reasonable likelihood of success on the merits because the Disputed Copyrights are not valid and therefore, the Court should deny Langmi's motion for a TRO. Specifically, the Opposing Defendants assert that the Disputed Copyrights contain material that preexisting copyrights, not owned by Langmi, covered at the time Langmi filed for the Disputed Copyrights.

To succeed on a copyright infringement claim, a plaintiff must (1) "demonstrate he owns a 'valid copyright;'" and (2) "show the defendant copied 'constituent elements of the work that

7

are original.'" *UIRC-GSA Holdings, LLC v. William Blair & Co.*, 90 F.4th 908, 912–13 (7th Cir. 2024) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). In order to be eligible for copyright protection, a work must be original. *Id.* at 914.

Certain specific rules govern circumstances in which a copyright incorporates material that a pre-existing copyright covers. Specifically, a copyright can be a "derivative work" of pre-existing copyrighted material. *See Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 517–19 (7th Cir. 2009) (describing the legal standards governing copyright protection and derivative work). Copyright law defines a "derivative work" as:

> A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

17 U.S.C. § 101. "The Copyright Act grants the owner of a copyright the exclusive right to prepare derivative works based upon the copyrighted work." *Pickett v. Prince*, 207 F.3d 402, 406 (7th Cir. 2000) (emphasis omitted). Under this exclusive right, someone who does not own the copyright of a pre-existing work may not make or copyright a derivative work based on that pre-existing work without a license from the owner of the copyright in the pre-existing work. *See Schrock*, 586 F.3d at 522–23. More specifically, the Seventh Circuit has clarified that in order to copyright a derivative work, the creator of the derivative work must have possessed permission from the owner of the copyright in the pre-existing work to create the derivative work. *Id.* at 523. However, the creator of the derivative work does not need to possess express permission from the owner of the copyright in the pre-existing work to copyright the derivative work; a license to create the derivative work alone is sufficient. *See id.*

Here, Langmi has submitted sufficient evidence to persuade the Court that it has a likelihood of success on the merits, and the Opposing Defendants' evidence does not undermine the seeming validity of the Disputed Copyrights. First, Langmi submitted the Disputed Copyrights' certificates, which create a presumption of the validity of the copyrights. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994) ("A certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the validity of a copyright." (citing 17 U.S.C. § 410(c))). Then, the Opposing Defendants attempted to refute Disputed Copyrights' validity with evidence that three designs that appear in the Disputed Copyrights existed before the Disputed Copyrights and that those three designs were themselves subject to copyright. The Opposing Defendants did not submit any direct evidence to show that when Wang and Zhao created the works subject to the Disputed Copyrights, they did not have licenses to create those works. Langmi directly responded to and rebutted the Opposing Defendants' arguments because Wang's declaration states that he "lawfully licensed" the three designs at issue from www.51yuansu.com and that website granted him the "right to download and use such materials for commercial purposes on e-commerce platforms." Doc. 41-1 at 1. Langmi also submitted screenshots that support that the three designs were present on www.51yuansu.com. *E.g.*, Doc. 40-1 at 8. Together, Wang's declaration and the screenshots support that Wang and Zhao possessed a license to create their works, and the Opposing Defendants' evidence does not undermine this. Therefore, the Court finds that based on the evidence before it at this time, Langmi owns valid copyrights.

Langmi has also demonstrated that Defendants copied "elements of the work that are original." *UIRC-GSA Holdings, LLC*, 90 F.4th at 912–13. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to

9

copied from other works), and that is possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). The Court can infer copying if the plaintiff has shown "that the defendant has the opportunity to copy the original (often called 'access') and that the two works are substantially similar." *Peters v. West*, 692 F.3d 629, 633 (7th Cir. 2012). Courts determine whether two works are substantially similar by applying the "ordinary observer" test: "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 509 (7th Cir. 1994) (quoting *Atari, Inc. v. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982)). Here, the Opposing Defendants do not dispute that they copied original elements of the Disputed Copyrights. Langmi sells products that use the Disputed Copyrights, which supports that the Defendants likely possessed access to the designs. Further, based on the screenshots of the Defendants' products and their significant similarities with Langmi's works, it appears that an ordinary reasonable person would find that the Defendants appropriated Langmi's works in creating their designs. Altogether, the Court finds that Langmi has shown that it has a likelihood of success on the merits.

B. Adequate Remedy at Law and Irreparable Harm

Next, the Court assesses whether Langmi has shown that it does not possess an adequate remedy at law and will experience irreparable harm in the absence of a TRO. Although in copyright cases the Supreme Court has "made clear that there is no . . . presumption" of irreparable harm simply by showing the defendant infringed a copyrighted work, *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012), "it is well established that the loss of goodwill

and reputation, if proven, can constitute irreparable harm," *Life Spine Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (citing *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 680 (7th Cir. 2012)). A plaintiff does not possess an adequate remedy at law where "damages would be 'seriously deficient as a remedy for the harm suffered.'" *Roadget Business Pte. Ltd. v. PDD Holdings Inc.*, No. 1:22-cv-07119, 2023 WL 4865005, at *10 (N.D. Ill. July 31, 2023) (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)).

Wang's affidavit, especially in the absence of any refuting evidence from the Opposing Defendants, sufficiently shows irreparable harm as he stated that Defendants' infringement will harm Langmi's brand identity, control over the quality of products associated with the brand, and goodwill. *See Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 21 C 3286, 2022 WL 17176498, at *3 (N.D. Ill. Nov. 23, 2022) (stating that a plaintiff adequately demonstrated irreparable harm "by pointing towards potential harm to goodwill, reputation, brand confidence, potential lost market share, and relinquished control of nature and quality of germane products in connection with their copyright"). These harms are "both severe and unquantifiable" such that the Court finds that money damages would not fully compensate Langmi for its loss and therefore, it possesses no adequate remedy at law. *See Roadget*, 2023 WL 4865005, at *10–11 (finding that copyright infringement that would harm goodwill, dilute source-identifying value, and cause consumer confusion created unquantifiable damages that there was no adequate remedy at law).

C. **Balance of Equities**

Finally, the Court considers whether the parties' potential harm and the public interest, justify the TRO. The Court must consider the public interest and impacts that a TRO could have on nonparties. *See Madden v. Amazon Servs., LLC*, No. 23 C 14163, 2023 WL 8827977, at *10

11

(N.D. Ill. Dec. 21, 2023) (quoting *Cassel v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021)). The public "has a strong interest in 'preserving the integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights.'" *Balsamo/Olson Grp., Inc. v. Bradley Place Ltd. P'ship*, 996 F. Supp. 757, 764 (C.D. Ill. 1996) (quoting *Atari*, 672 F.2d at 620).

The Court finds that the balance of equities favor granting the TRO. While the TRO may have adverse business effects on the Defendants, the Defendants' sales of products involving the Disputed Copyrights inflicts irreparable harm on Langmi's business. Further, in balancing the parties' respective hardships, the Court finds that the harm Langmi faces in the absence of a TRO outweighs the burden a TRO would impose on the Defendants, as the TRO will only enjoin the Defendants from conducting business that allegedly violates federal copyright law. *See CSC Holdings, Inc. v. Greenleaf Elecs., Inc.,* No. 99 C 7249, 2000 WL 715601, at *7 (N.D. Ill. June 2, 2000) (finding that the balance of equities supporting granting an injunction where the injunction would enjoin defendants from "conducting a business that is prohibited by federal law"). The Court also finds that the balance of public policies weighs in favor of the TRO because of the public's interest in preserving copyright protections.

## CONCLUSION

For the foregoing reasons, the Court grants Langmi's motion for a TRO [19].

Dated: July 2, 2025

SARA L. ELLIS
United States District Judge