UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHENZHEN LANGMI TECHNOLOGY CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) | No. 25 C 1966 |
| v. | ) ) | Judge Sara L. Ellis |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Shenzhen Langmi Technology Co., Ltd. ("Langmi") sued thirty-six defendants listed in "Schedule A" to the complaint for copyright infringement. After amending "Schedule A" to include only Adrmylight, Gwellife, sminktee, Temgoffeau-US, WNNXIA, WuMeijL, XIANGZHE, and ZSMIDU (collectively, "Defendants"), Langmi sought and obtained a temporary restraining order ("TRO"). Langmi later filed a motion for a preliminary injunction but voluntarily dismissed the case before briefing was complete. Defendants have now filed a motion to recover damages on the $10,000 TRO bond. In their reply, Defendants further request that the Court award attorneys' fees.

Because Langmi does not dispute that Defendants were wrongfully enjoined or restrained, the Court finds that Defendants can recover damages on the TRO bond. The Court further finds that Defendants cannot recover damages in excess of $10,000 because they have not shown that Langmi acted in bad faith in obtaining the TRO. Finally, because Defendants made their request for attorneys' fees for the first time in the reply brief, the Court denies the request as procedurally improper.

**BACKGROUND**

Langmi is a Chinese company that produces and markets cosmetic products, including remedial and corrective hair shampoos. Langmi owns two U.S. Copyrights in connection with these products, registration numbers VA 2-383-395 and VAu 1-505-640 (collectively, the "Disputed Copyrights"), and uses the copyrighted images for product packaging and e-commerce listings around the world, including in the United States. Langmi filed this copyright infringement action on February 25, 2025, alleging that Defendants were selling products using Langmi's copyrighted images.

Shortly after filing this lawsuit, Langmi moved for a TRO. Defendants opposed Langmi's motion, arguing that the Disputed Copyrights were invalid because they contained three pre-existing images already copyrighted by third parties. After Langmi's owner, Lang Wang, submitted a declaration stating that he had lawfully licensed these images from the website www.51yuansu.com through his VIP membership agreement, the Court found that Langmi had made a sufficient showing that the Disputed Copyrights were valid and granted the motion for a TRO. The TRO required, among other things, that Langmi deposit a $10,000 bond with the Court.

Shortly following this Court's TRO decision, Defendants moved for reconsideration and Langmi moved for a permanent injunction. Defendants presented new evidence to the Court to support their argument that Langmi did not possess a valid license to use the three pre-existing images in the Disputed Copyrights. Particularly relevant here, this evidence included "backend" electronic data, or metadata, from www.51yuansu.com. Defendants argued that this metadata indicated that one of the pre-existing images, a mushroom, was first published on

www.51yuansu.com in 2021. According to Defendants, this undermined Wang's claim that he licensed the mushroom image from www.51yuansu.com in 2019.

Langmi disputed this characterization, again arguing that "[a]ccording to our records, the reishi mushroom image was lawfully purchased from www.51yuansu.com in 2019." Doc. 51 at 1. As additional support, Langmi attached (1) undated authorization letters from www.51yuansu.com, stating that they authorized "Wang Lang"[1] to use the three pre-existing images at home and abroad, permanently, and in product packaging and (2) a declaration from Hailong Chen, the general manager of the entity that operated www.51yuansu.com ("Hangzhou"),[2] again stating that "Wang's use of said materials does not, and shall not at any time, constitute an infringement of the copyright or proprietary rights of the Website or the content uploader." Doc. 57-1 at 1.

After Langmi filed the authorization letters, Defendants submitted screenshots and translations of a conversation on the WhatsApp electronic messaging platform between Defendants' agent and an employee of Hangzhou on July 24, 2025. In the WhatsApp exchange, Defendants' agent appears to have sent a document to the Hangzhou employee and asked "[i]s this authorization document from your company?" Doc. 59-1 at 3. It is not possible to see precisely what document Defendants' agent shared with the Hangzhou employee, as the resolution of the screenshots of the conversation is too low, but it appears to be the authorization letters. The Hangzhou employee initially replies to Defendants' agent's question with: "This is

---

[1] Note that although Wang's name appears as "Lang Wang" on his declarations, it appears the documents are referring to the same person.

[2] The Court notes that the VIP membership agreement that Defendants submitted and Chen's declaration both state that this entity is named Hangzhou *Qimi* Network Technology Co., Ltd., Docs. 44-1 at 8; Doc. 57-1 at 1, whereas a declaration from Defendants' counsel states that the entity is named Hangzhou *Zimi* Network Technology Co., Ltd., Doc. 59-1 ¶ 2. The Court understands the parties to be referring to the same company, and for purposes of this motion will refer to the entity as "Hangzhou."

fake. Our company does not issue authorization documents to private persons." *Id.* However, after questioning the Hangzhou employee further, the employee entirely reversed their previous statement: "Awkward—I just sent the information to the materials department to check, and they said that these are indeed original materials from our company that we authorized him to use. He specifically came to the company to purchase the authorization for these two materials." *Id.* at 5.

The Court held a hearing on September 26, 2025, primarily to seek clarification as to when Wang obtained the authorization letters. Langmi's counsel represented that Wang likely obtained the authorization letters after obtaining the Disputed Copyrights but did not have a more detailed timeline. After this hearing, the Court denied the motion for reconsideration as moot and set a briefing schedule on Langmi's renewed motion for a preliminary injunction. Before briefing was complete, however, Langmi moved to voluntarily dismiss the case.

## ANALYSIS

I. **Damages on TRO Bond**

    A. **Defendants are entitled to recover damages on the TRO bond.**

The first issue the Court must address is Defendants' entitlement to recover damages on the injunction bond. In the Seventh Circuit, "a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case." *Coyne-Delany Co., Inc. v. Capital Dev. Bd. of Ill.,* 717 F.2d 385, 391 (7th Cir. 1983). When deciding whether to award injunction damages, district courts are "guided by the implicit presumption in Rules 54(d) and 65(c) in favor of awarding them," along with "objective factors—such as the resources of the parties, the defendant's efforts or lack thereof to mitigate his damages, and the outcome of the underlying suit." *Id.* at 392. The fact that a plaintiff

4

brought the case in good faith is not a sufficient reason for denying damages on an injunction bond. *Id.*

Here, Defendants argue that they were wrongfully enjoined or restrained when the TRO was in effect between July 3, 2025 and July 22, 2025, citing cases holding that "a Plaintiff's voluntary dismissal [or abandonment] of a case establishes that the defendant was wrongfully enjoined or restrained." Doc. 80 at 9–10 (citing *Smart Study Co. v. Bichha123*, 505 F. Supp. 3d 322, 326 (S.D.N.Y. 2020); *B.G. Soft Ltd. v. BG Soft Int'l, Inc.*, No. CV-01-17, 2002 WL 1467744, at *3 (E.D.N.Y. Apr. 29, 2002)). Langmi does not dispute that Defendants were wrongfully enjoined or restrained, nor does it identify any reasons for requiring Langmi not to pay in this case. The Court therefore finds that Defendants were wrongfully enjoined or restrained and are entitled to recover damages on the injunction bond.

### B. Defendants can recover $10,000 in damages.

The Court next turns to the amount of damages recoverable in this case. The bond in this case was $10,000, and a defendant typically cannot recover damages in excess of the bond unless the plaintiff has acted in bad faith. *Coyne-Delany,* 717 F.2d at 393–94; *see also Tsiolis v. Interscope Recs., Inc.*, 946 F. Supp. 1344, 1357 (N.D. Ill. 1996) ("It is well-known, well-established, and oft-discussed that the bond places a ceiling on the damages that Defendants could obtain for the wrongful grant of an injunction, absent a showing that the [plaintiffs] acted in bad faith."). That said, a defendant is "not automatically entitled to the amount of the bond; they still have to prove the amount of their damages." *Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 20 C 4806, 2024 WL 3292812, at *2 (N.D. Ill. July 2, 2024) (citing *Mead Johnson & Co. v. Abbott Lab'y's*, 201 F.3d 883, 888 (7th Cir. 2000)). "While damages on the injunction bond need not be proved 'to a mathematical

5

certainty,' it also cannot be speculative." *Id.* (citing *Triumph v. Ward*, No. 11 C 7927, 2011 WL 6754044, at *5 (N.D. Ill. Dec. 22, 2011)).

Defendants argue that the Court should allow them to recover the full amount of damages they sustained as a result of being wrongfully enjoined or restrained, which far exceeds the amount of the bond. The Court therefore must determine whether Defendants have met their burden of (1) showing that Langmi acted in bad faith in obtaining the TRO and (2) providing proof of the amount of damages they sustained. The Court addresses each issue in turn.

### 1. Defendants cannot recover damages in excess of the bond.

Defendants ask the Court to allow them to recover damages in excess of the bond, arguing that (1) a declaration submitted by Lang Wang, the owner of Langmi, in support of the renewed motion for entry of a TRO and (2) an authorization letter submitted by Langmi in support of the motion for preliminary injunction both show that Langmi acted in bad faith. But, for the reasons stated below, the Court disagrees.

First, Defendants rely on the Wang declaration as proof of bad faith. In this declaration, Wang stated that he and his wife, Yun Zhao, worked jointly to create the Disputed Copyrights by "incorporat[ing] three preexisting elements . . . lawfully licensed from the website www.51yuansu.com." Doc. 40-1 ¶ 3. As support, Wang attached two exhibits purporting to be his "download history for these materials." *Id.*; *see also id.* at 8–14. Defendants argue, however, that a review of the metadata from www.51yuansu.com indicates that one of the three preexisting elements used to create the Disputed Copyrights, a mushroom image, "was not published on the 51yuansu website until April 19, **2021**," Doc. 80 at 10, meaning that Wang could not have licensed the mushroom image from www.51yuansu.com in 2019. For this reason, Defendants believe that Wang made false statements in his declaration and fabricated his download history.

6

The Court agrees with Langmi, however, that Defendants have not provided sufficient evidence to support this argument. "The Court is not a factual expert on metadata, nor will it pretend to be by trying to ascertain the meaning of data point entries in the metadata produced in evidence." *Does 1–9 v. Murphy*, No. 7:20-CV-00947, 2025 WL 2533961, at *29 (D.S.C. Sept. 3, 2025). Instead, "the Court must rely on [evidence] provided by" the parties "regarding the interpretation and analysis of the metadata in this case." *Id.* And because metadata is a "technical concept[]" "beyond ordinary knowledge," *United States v. Wehrle*, 985 F.3d 549, 554 (7th Cir. 2021), that evidence generally comes in the form of expert opinions. Here, however, Defendants originally supported their argument only with counsel's own interpretation of the metadata on www.51yuansu.com. But this unsupported interpretation is too speculative to support a finding of bad faith in this case. *See Aminov v. Berkshire Hathaway Guard Ins. Co.*, No. 21-CV-479, 2022 WL 818944, at *2 (E.D.N.Y. Mar. 3, 2022) (rejecting "counsel's own analysis" of metadata as "misplaced and unsupported speculation"); *Pearson v. U.S. Bank Nat'l Ass'n*, No. CIV. 13-889, 2014 WL 4163020, *14, *17 (D. Minn. Aug. 21, 2014) (rejecting conclusions drawn from "attorney's personal analysis of document metadata" as "speculative, especially in light of the common understanding that 'creation dates' in metadata may be altered by copying a document or moving it to a new location").

It was only in reply that Defendants finally submitted expert opinion evidence to support their position. Specifically, Defendants provided a declaration from graphic designer Andrew Nicholas, who opined that "the webpage was originally published on April 19, 2021." Doc. 84-1 ¶ 6. This is inappropriate, because "[a] party cannot make conclusory and underdeveloped arguments in its opening brief and then deign to support and develop those arguments in his or her reply brief." *Johnson v. Root*, 812 F. Supp. 2d 914, 924 (N.D. Ill. 2011). The Court

therefore declines to consider this evidence. *See Thompson v. AT&T Servs., Inc.*, No. 17 C 3607, 2018 WL 4567714, at *6 (N.D. Ill. Sept. 24, 2018) (declining to consider declarations submitted for the first time in a reply brief where the original motion "was filed without any supporting evidence").

Even if the Court were to consider this evidence, however, it would not change the outcome. First, the Court is unable to determine whether Nicholas is qualified to opine on metadata. Nicholas is a graphic designer; he does not claim to be a computer forensics expert and has no education or certifications related to computer forensics. *See* Doc. 84-1 at 8. And while Nicholas states that he has "considerable experience . . . reading/interpreting the code and metadata behind a webpage," Doc. 84-1 ¶ 3, his declaration is silent as to the nature and extent of this experience. Defendants and Nicholas "are essentially asking the Court to accept his representation that he has expertise based on experience, without explaining what that experience is or how his expertise grew from it." *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 647 (S.D.N.Y. 2014). Moreover, Nicholas provides no explanation as to how this experience informed his opinion in this case. Courts routinely hold that "[a] witness who offers expert testimony based on his experience must connect his experience to the facts of the case." *Potts v. Manos*, No. 11 C 3952, 2017 WL 4365948, at *5 (N.D. Ill. Sept. 29, 2017); *see also* Fed. R. Evid. 702 Advisory Committee Notes to 2000 Amendments ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."). "[A]n expert's own say-so does not suffice," and "vague reference to an expert's experience does nothing to bridge the analytical gap." *Hostetler v. Johnson Controls, Inc.*, No. 3:15-CV-226, 2018 WL 3868848, at *4 (N.D. Ind. Aug. 15,

8

2018). Ultimately Nicholas' failure to describe his relevant experiences or connect those experiences to his conclusions in this case renders his opinion simply "a bottom line," which the Seventh Circuit has repeatedly confirmed "supplies nothing of value to the judicial process." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005).

Defendants also point to one of the authorization letters submitted by Langmi in support of the motion for preliminary injunction, arguing that Langmi obtained it "during this litigation to cure the licensing issue." Doc. 80 at 8. But, as Langmi points out in response, this authorization letter was filed *after* the Court granted the TRO. A defendant must "prove that the plaintiff acted in bad faith *in obtaining the injunction*" to recover damages in excess of the bond. *Ward*, 2011 WL 6754044, at *3 (emphasis added); *see also qad. inc. v. ALN Assocs., Inc.*, 781 F. Supp. 561, 562 (N.D. Ill. 1992) ("[T]he ceiling [set by the bond] is lifted where the other party had acted in bad faith *in obtaining the preliminary injunction*." (emphasis added)). Indeed, Defendants repeatedly argue that the authorization letter "did not exist before the Court entered the TRO." Doc. 84 at 9; *see also* Doc. 80 ("The obvious truth is that Plaintiff could not present the Authorization Letter earlier because it didn't exist."). Because Langmi did not use the authorization letter to obtain the TRO, it cannot use that letter to establish that Langmi acted with bad faith when obtaining the TRO.

Defendants argue that this is a "dubious" argument, Doc. 84 at 9, but they cite no authority to the contrary. Nor do they cite any authority to support their argument that a general "pattern of misconduct" *after* obtaining an injunction or TRO warrants damages in excess of the bond. *Id.* at 10. The Court therefore does not credit these arguments. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (holding that a party waives an argument if it is "underdeveloped, conclusory, or unsupported by law"); *Gross v. Town of Cicero*, 619 F.3d 697,

9

704 (7th Cir.2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments."). But even if the Court did consider the authorization letter, it does not help their case. Defendants argue that "Wang visited the website's offices during this litigation to cure the licensing issue" by obtaining the authorization letter, Doc. 80 at 8, but they provide no explanation or authority to support the proposition that this was improper. On the other hand, Langmi has provided authority indicating that a retroactive ratification of an informal license may be "sufficient to insulate a holder of copyright in a derivative work from charges by an infringer of that copyright that the derivative work was created without the permission of the holder of the original copyright." Doc. 62 at 3–4 (citing *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 34 n.6 (2d Cir. 1982)). Given this caselaw, the Court cannot say that Langmi's belated attempt at curing the licensing issue was in bad faith.[3]

For these reasons, the Court concludes that Defendants cannot recover damages in excess of the bond.

---

[3] The Court notes that Defendants have represented multiple times that a representative of www.51yuansu.com "indicated that Wang paid a personal visit to the website's office *recently* to request broader usage rights" and obtain the authorization letter. Doc. 80 at 15; *see also* Doc. 84 at 8 ("Defendants, through independent investigation, discovered that Plaintiff personally visited the website to seek international usage rights only after Defendants raised the licensing issue in the Motion for Reconsideration."); Doc. 59 at 6 ("[T]he website's representative indicates that Wang visited the office to purchase a broader license for the disputed images only recently, but not in 2019, the purported creation date of the asserted works."). But upon review of these communications, it appears that the representative simply informed Defendants that Wang "specifically came to the company to purchase authorization for these two materials." Doc. 59-1 at 5. The representative did not state that this visit was recent or provide any indication as to when it occurred. *Id.* The Court admonishes Defendants and cautions them to avoid misrepresentations going forward. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 563 (7th Cir. 2014) ("These misrepresentations of the record did not comport with parties' duty of candor to the courts. Hospira seems to have based its litigation strategy on the hope that neither the district court nor this panel would take the time to check the record. Litigants who take this approach often (and we hope almost always) find that they have misjudged the court."); *Cornelius v. LaCroix*, 838 F.2d 207, 211 n.6 (7th Cir. 1988) ("Distortions and misrepresentations *never* help a client's case; we admonish counsel to be more forthright in the future.").

**2. Defendants have sufficiently proven the amount of damages.**

Finally, the Court must determine whether Defendants have sufficiently proven the amount of their damages. The fact that Defendants may recover up to the amount of the bond does not mean that they are "automatically entitled" to that; "they still have to prove the amount of their damages." *Hangzhou*, 2024 WL 3292812, at *2 (citing *Mead Johnson & Co.*, 201 F.3d at 888). "While damages on the injunction bond need not be proved 'to a mathematical certainty,' it also cannot be speculative." *Id.* (citing *Ward*, 2011 WL 6754044, at *5).

The Court finds that Defendants have sufficiently established that they incurred at least $10,000 in damages. In the motion, Defendants calculated damages for the Amazon seller accounts frozen during the nineteen days in which the TRO was in effect, arguing that the "total lost profits during the injunction period was approximately $39,161." Doc. 80 at 11. As support, they submitted declarations from the operators of each of these Amazon seller accounts, along with the corresponding Amazon business reports. The Amazon business reports include data regarding revenues and expenses in the months leading up to the TRO. From this, Defendants calculated total lost profits during the injunction period.

In response, Langmi argues that Defendants' evidence and calculations were insufficient for two reasons. First, Langmi argues that the declarations lack sufficient supporting documentation because the Amazon business reports are illegible and in Chinese. Second, Langmi argues that Defendants incorrectly computed their lost profits by making various mathematical errors. To address both issues, Defendants filed a supplement with (1) higher resolution Amazon business reports with translations for the relevant portions and (2) updated calculations correcting the mathematical errors identified by Langmi. Based on these updated calculations, Defendants argue that their total lost profits were $47,045.54. Langmi did not

11

object to this supplement, nor did it request leave to file a surreply. Because this supplement appears to resolve Langmi's concerns regarding Defendants' original calculations, the Court is satisfied that the damages in this case are sufficiently substantiated. Because the substantiated damages exceed $10,000, Defendants can recover the entire amount of the bond.

**II.     Attorneys' Fees**

Finally, Defendants request that the Court award attorneys' fees due to Langmi's alleged litigation misconduct. This request did not appear in the original motion; Defendants instead included this request for the first time in their reply brief. According to Defendants, they "did not request attorneys' fees in their opening brief because, as a practical matter, Plaintiff is based in Taiwan, and the likelihood of recovering any damages over the bond amount, much less attorneys' fees, is doubtful." Doc. 84 at 11. Upon further consideration, Defendants decided that "an award of attorneys' fees is necessary to protect the integrity of the Court and deter future misconduct." *Id.*

While the Court appreciates Defendants' newfound desire to protect the Court's integrity, this request is procedurally improper. *See Baker v. Am.'s Mortg. Servicing, Inc.*, 58 F.3d 321, 325 (7th Cir. 1995) ("[I]ssues or requests raised for the first time in a reply brief are deemed waived."); *Cent. States, Se. & Sw. Areas Pension Fund v. Miracle Supply Co., Inc.*, No. 19 C 5531, 2022 WL 22316578, at *5 (N.D. Ill. May 27, 2022) (denying request for sanctions because it was "made for the first time in [the] reply brief"). The Court denies Defendants' request for attorneys' fees.

**CONCLUSION**

For these reasons, the Court grants in part and denies in part Defendants' motion to recover damages on TRO bond [80]. The Court denies Defendants' requests for damages in

12

excess of the TRO bond and attorneys' fees. The Court orders that the full amount of the $10,000 bond posted by Langmi be released to Defendants' counsel, Peter S. Wolfgram, Stratum Law LLC, 2424 E. York St. Ste. 223, Philadelphia, PA 19125.

Dated: February 26, 2026

                                                      SARA L. ELLIS
                                                      United States District Judge